Michael D. Seplow (SBN 150183)
mseplow@gmail.com
Aidan C. McGlaze (SBN 277270)
amcglaze@sshhlaw.com
SCHONBRUN SEPLOW HARRIS & HOFFMAN LLP
723 Ocean Front Walk
Venice, California 90291
Telephone: (310) 396-0731
Fax: (310) 399-7040

Attorneys for Plaintiff
RIMANPREET UPPAL and Settlement Class

Additional Counsel for Plaintiff
listed on following page

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RIMANPREET UPPAL, an Individual, Individually and on behalf of, all others similarly situated and the general public,<br><br>Plaintiff,<br><br>vs.<br><br>CVS PHARMACY, INC., a Rhode Island corporation; CVS RX SERVICES, INC., a New York corporation; GARFIELD BEACH CVS, LLC, a California limited liability company; and DOES 1-50, inclusive,<br><br>Defendants. | Case No. 3:14-cv-02629-VC<br><br>[ASSIGNED TO THE HONORABLE JUDGE VINCE CHHABRIA]<br><br>DECLARATION OF CAROL A. SOBEL IN SUPPORT OF PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS, AND SERVICE AWARD<br><br>**Date:** March 3, 2016<br>**Time:** 10:00 a.m.<br>**Courtroom:** 4 (San Francisco)<br><br>[*FILED CONCURRENTLY WITH PLAINTIFFS' MOTION FOR FINAL APPROVAL; SUPPORTING DECLARATIONS; AND [PROPOSED] ORDER GRANTING FINAL APPROVAL AND FEES*] |

Thomas W. Falvey (SBN 65744)
thomaswfalvey@gmail.com
Michael H. Boyamian (SBN 256107)
mike.falveylaw@gmail.com
LAW OFFICES OF THOMAS W. FALVEY
550 North Brand Boulevard, Suite 1500
Glendale, CA 91203
Telephone: (818) 547-5200
Fax: (818) 500-9307

Hirad D. Dadgostar (SBN 241549)
hirad@dadgostarlaw.com
Alireza Alivandivafa (SBN 255730)
aalivandi@gmail.com
Azadeh Dadgostar Gilbert (SBN 276072)
azadeh@dadgosarlaw.com
DADGOSTAR LAW LLP
12400 Wilshire Boulevard, Suite 400
Los Angeles, CA 90025
Telephone: (310) 820-1022
Fax: (310) 820-1088

V. James DeSimone (SBN 119668)
vjdesimone@gmail.com
V. JAMES DeSIMONE LAW
13160 Mindanao Way, Suite 280
Marina Del Rey, CA 90292
Telephone: (310) 626-1487

Attorneys for Plaintiff
RIMANPREET UPPAL and Settlement Class

**DECLARATION OF CAROL A. SOBEL**

I, CAROL A. SOBEL, declare:

1.  I am an attorney admitted to practice before the Supreme Court of the State of California and the United States District Court for the Central District of California. This declaration is submitted in support of the attorney fees requested by Plaintiff's counsel in the above-captioned matter. I have personal knowledge of the facts below and if I were called to testify to those facts would do so competently.

2.  I graduated from law school in 1978 and was admitted to practice in December of that same year. Until April of 1997, I was employed by the ACLU Foundation of Southern California ("ACLU"). Throughout the time that I was an attorney at the ACLU, my primary areas of litigation were First Amendment rights and police litigation. For six years prior to 1997, I held the position of Senior Staff Counsel in the legal department. A true and correct copy of my résumé is attached at Exhibit 1. I have received numerous awards for my work in the area of First Amendment litigation and, more recently, on behalf of homeless persons. I have been qualified as an expert in ethics and the practices of public-interest legal groups, once before the State Bar and once in the Los Angeles Superior Court.

3.  My billing rate for 2015 was $875 an hour. I was awarded fees at this rate by the Ninth Circuit in *CPR for Skid Row v. City of Los Angeles*, 779 F.3d 1098 (9th Cir. 2015). The award at $875 an hour issued after a fee award earlier this year in which the trial court reduced my rate to $750 an hour without supporting evidence of a lower market rate. *Desertrain v. City of Los Angeles*, 10-cv-09053 RGK (C.D. Cal. 2015) [Dkt. 143]. Subsequently, I settled the fees in the *Desertrain* case for $1.1 million dollars, inclusive of the appellate fees. This represented a reduction of less than five percent on the appeal fees, which were calculated with the lodestar rate of $875 an hour. In late November, through mediation, I settled the fees in *Lavan v. City of Los Angeles*, 693 F.3d 1022 (9th Cir. 2012), at the full lodestar based on the rate of $875 an hour. The settlement is subject to approval by the City Council. In 2012, I billed my time at $795 an hour. I was not awarded fees in a contested motion at that rate; however, I was retained and paid at that rate in a case in federal court. In 2010, I was awarded fees at $725 an hour by Judge Otero in a

1  contested fee motion. The case, *Long Beach Area Peace Network v. City of Long Beach*, involved a First Amendment challenge to a permitting scheme. *See* 574 F.3d 1011 (9th Cir. 2009). In 2009, I was awarded fees at $710 an hour in two contested fee motions in the federal district court, in Los Angeles, first by Judge Pregerson and then by Judge Matz in a hybrid class action. *See Fitzgerald v. City of Los Angeles*, 2009 U.S. Dist. LEXIS 34803 (CD Cal. 2009), and *MIWON v. City of Los Angeles*, CV 07-7032 AHM (C.D. Cal. 2009). In 2008, in another contested fee motion in the district court, I was awarded fees at the rate of $695 an hour by Judge Real. *See Jones v. City of Los Angeles*, cv 03-1142 R. 444 F.3d 1118 (2006), *vacated per settlement* 505 F.3d 1006 (9th Cir. 2007). Although the defendant City challenged the fees in *Jones* on the issue of entitlement, the rates were not challenged and the award was affirmed on appeal. *Jones*, Circuit Case No. 11-56240 (9th Cir. 2014) [Dkt. 67].

4. During the time that I was Senior Staff Counsel at the ACLU, I was responsible for preparing many of the fee motions in cases where the ACLU represented the prevailing party. Because the ACLU does not bill its clients on an hourly basis for its services, I was required to obtain information to establish reasonable market rates for the ACLU lawyers. It was my practice to obtain current billing rates for lawyers of comparable skill and experience at several firms throughout the Los Angeles legal market. I did this on an annual basis, telephoning partners who were familiar with the ACLU lawyers in question so that they could make an informed judgment about the comparable skill levels of the attorneys at their firms whose rates were used to establish ACLU billing rates. At the time that I contacted these individuals, I was aware that the partners had been personally involved in pro bono litigation with the ACLU. Since these firms had worked directly with the ACLU lawyers for whom I sought to establish a market billing rates, they were able, based on personal knowledge, to assess the skill and experience of the ACLU lawyers and make a comparison to lawyers in their respective firms.

5. Since entering private practice, I have continued to survey firms each year to obtain relevant comparisons for billing rates since I do not charge my clients for representation. I continue to do the same type of complex constitutional litigation I did when I was employed at the ACLU. My cases almost exclusively are brought on behalf of low-income individuals, who are unable to

afford legal representation. Any recovery of fees is contingent upon my clients prevailing in the litigation. To keep current with market rates, I generally survey annual billing rates at firms the first time in each year I prepare a fee motion or enter into settlement discussions regarding fees. As part of my survey, I make it a point to consult with smaller boutique civil rights law firms, including Hadsell, Stormer & Renick, a private firm with three equity partners and several non-equity partners and associates, and Kaye, McLane, Bednarski & Litt, a private firm with four equity partners and two or three associates at one time, depending on case demands. I obtain from these firms any orders in the past year awarding them statutory fees.

6. I have presented at CLEs on attorney fees on several occasions. Most recently, I provided training for attorneys at the Legal Aid Foundation of Los Angeles. My supporting fee declarations have been cited favorably by numerous courts, including in *Nadarajah v. Holder,* 569 F.3d 906, 916–917 (9th Cir. 2009); *Orantes-Hernandez v. Holder,* 713 F.Supp.2d 929, 963–964 (C.D.Cal. 2010); *Torrance Unified Sch. Dist. v. Magee*, CV 07-2164 CAS (Rzx) (C.D.Cal. 2008), [2008 U.S.Dist. Lexis 95074, 21]; *Atkins v. Miller,* CV-01-01574 DDP (C.D.Cal 2007); *Jochimsen v. County of Los Angeles*, B223518 (2d Dist. June 23, 2011) (unpublished); *Dugan v. County of Los Angeles*, cv 11-08145 CAS (C.D. Cal. Mar. 3, 2014); and *Flores v. City of Westminster*, SA-CV-11-0278 (C.D. Cal. 2014). In *Jochimsen,* the panel held that I was qualified as an expert to opine on market rates.

7. Based on the information I have obtained regarding market rates, I have formed the opinion that there is a growing difference between the fees sought and awarded to boutique civil rights firms and public-interest legal offices, and the fees awarded to larger business law firms that occasionally do pro bono civil rights and civil liberties litigation. Some of the fee declarations by pro bono counsel that I reviewed to form this opinion on the fee applications are cited in my declaration at Exhibits 8, 9, 10 and 12. This is so even when the civil rights lawyers co-counsel with the large firms and even though the skill and experience of the attorneys in question is comparable. Based on my experience over the past 33 years working at the ACLU and with the pro bono bar, civil rights lawyers are often more skilled and experienced than their classmates at large law firms because the civil rights attorneys handle major litigation from the beginning of their employment,

no matter how many years of practice they may have. Despite this divergence, the civil rights bar is closer to large firm rates than to those of small firms doing general litigation.

8. In evaluating current market rates, I apply the methodology that billing by lawyers at civil rights firms and public interest organizations at rates even marginally comparable to those of attorneys engaged in complex federal litigation is proper and consistent with the order of the U.S. Supreme Court in *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). Based on these cases, I assume that determining appropriate market billing rates for prevailing party attorneys of similar skill, experience and reputation does not depend upon whether they work for a non-profit, represent people on contingency, serve as in-house counsel, or charge a minimal rate for paying clients with the potential of receiving a market rate award if successful. *See Nadarajah v Holder* (9th Cir 2009) 569 F3d 906, 910 (9th Cir. 2009).

9. In addition to speaking with partners at various law firms, I also become familiar with market rates charged by attorneys in the relevant legal market by reviewing declarations filed in fee applications in other cases, as well as decisions awarding fees. Specifically, in addition to reviewing awards to the firms described in paragraph 5, I regularly review fee motions submitted by, and awards made to, the ACLU Foundation of Southern California, the Mexican America Legal Defense and Educational Fund ("MALDEF"), the Western Center on Law and Poverty, Public Counsel, the Disability Rights Legal Center and other public interest groups in Los Angeles to determine what is being sought and awarded as market rates. I often provide supporting fee declarations on reasonable market rates to these public interest legal organizations. In many instances, the cases also involve co-counsel from large firms, so the fee motion provides market rates to attorneys of comparable skill, experience and reputation at large firms doing similarly complex federal litigation. I obtain copies of supporting rate declarations filed by the large firm counsel in these cases, as well.

10. I also search for fee awards and supporting declarations using various legal databases, including LEXIS. My practice is to utilize PACER and state court online databases to obtain copies of declarations and other documents filed in support of fee motions, such as prior fee awards submitted as exhibits. I conduct these searches to obtain information regarding local market rates and to obtain public documents setting out rates charged by opposing counsel.

11. I apply several principles to establish reasonable market rates. First, I look to rates awarded to the attorneys in previous cases because I understand that such awards are strong evidence of reasonable market rates. *See Chaudhry v City of Los Angeles*, 751 F3d 1096, 1111 (9th Cir. 2014). Evidence of billing rates by attorneys engaged in similarly complex business litigation is an approved method of establishing reasonable market rates for civil rights attorneys who do not regularly bill clients on an hourly basis. This approach has been approved by both the California and federal courts, focusing on a comparison to market rates for attorneys of similar skill, experience and reputation, since most civil rights attorneys are not paid hourly for their services at market rates. *See e.g.,* Pearl, *California Attorney Fee Awards*, CEB 2012, §9.109 (2012).

12. The second principle I apply in assessing the reasonableness of rates is that the relative "simplicity" or "complexity" of a case is reflected in the efficiency of hours, not the lodestar rate of the attorney. *See Van Skike v Director, Office of Workers' Compensation Programs*, 557 F3d 1041, 1046 (9th Cir. 2009).

13. I understand that fees are being sought for the attorneys and support personnel listed below. The chart below sets out the individuals for whom fees are sought, their year of graduation where applicable, and the rates sought.

| Personnel | Role | Graduation | Rate |
| --- | --- | --- | --- |
| V. James DeSimone | Partner | 1985 | $825 |
| Michael Seplow | Partner | 1990 | $760 |
| Aidan McGlaze | Junior Partner | 2007 | $530 |
| Law Clerks | | N/A | $200 |
| Paralegals | | N/A | $200 |

14. It is my opinion that each of the requested rates is reasonable in both the Los Angeles and San Francisco legal markets. In my experience, attorneys engage in complex litigation apply the same rates regardless of the type of case throughout these two regions. Attached to my declaration are true and correct copies of fee declarations and awards in other cases in Los Angeles and San Francisco, supporting Plaintiffs' requested rates. Each exhibit bears the ECF heading of the federal court, or the filing stamp of the state Superior Court.

15. I am personally familiar with most of the personnel at Schonbrun Seplow Harris &

1  Hoffman LLP. Paul Hoffman and I worked together at the ACLU for 10 years. Since I left the
2  ACLU to enter into private practice, I have co-counseled at least a dozen cases with Mr. Hoffman.
3  After Mr. Hoffman joined SSHH in 1999, I continue to co-counsel cases with him and other
4  attorneys at SSHH, including Mr. DeSimone. In my experience, individually and as a law firm, the
5  lawyers at SSHH are highly regarded as civil rights attorneys. I am familiar with their résumés and,
6  on that basis, believe that they are all widely recognized as exceptional attorneys in their field.
7  Based on my knowledge of the experience and skill of each attorney and my general interaction with
8  the SSHH firm, as well as my awareness of billing rates for lawyers of similar skill, reputation and
9  experience in the two largest metropolitan areas in the state, it is my opinion that the hourly rates
10 sought by this motion are well within the range of reasonable market rates.

11         16.     I have known Mr. DeSimone since approximately 1989, when he contacted my then-
12 colleague at the ACLU, Robin Toma, about a case Mr. DeSimone had in the appellate court. Since
13 then, I have had multiple professional contacts with him and have formed the opinion that he is a
14 highly skilled and competent attorney. I co-counseled a First Amendment police misconduct case,
15 *MIWON v. City of Los Angeles*, CV 07-7032 AHM, with his firm from 2007 to 2009. In that case,
16 the 2009 rate requested and approved for Mr. DeSimone in the lodestar cross-check was $625 an
17 hour. I am aware, based on my review of the order issued in *Taylor-Ewing v. City of Los Angeles*,
18 cv-07-5556 GHK (C.D. Ca.), that he was awarded fees at the 2010 rate of $650 an hour. I provided
19 supporting fee declarations for Mr. DeSimone in numerous cases, including *Charlebois v. Angels*
20 *Baseball*, 2012 U.S. Dist. LEXIS 91069 DOC (C.D. Cal. 2012), where the Court approved the rate
21 of $695 an hour three years ago.

22         17.     Mr. DeSimone's requested rate is reasonable when compared to the rates approved
23 in Exhibit 2, *Communities Actively Living Free and Independent v. City of Los Angeles,* cv-09-0287
24 CBM (C.D. Cal. 2013). There, the Court performed a lodestar cross-check in a class action and
25 approved the rate of $800 an hour for Laurence Paradis of Disability Rights Advocates ("DRA"),
26 based in Northern California. Mr. Paradis was identified in the Court's order as a 1985 law
27 graduate. Ex. 2, pp. 6,7. Significantly, although the Court's order issued in 2013, the settlement was
28 based on 2012 rates applied at the time that the parties reached their settlement. *Id.* at ¶3, p.3, l. 15-

1    18. The rate Mr. DeSimone seeks now is only $25 above the rate Mr. Paradis was awarded in 2012, with four years less experience than Mr. DeSimone has now.

18.    Although Mr. Paradis was seeking fees in Los Angeles in *Communities Actively Living*, it is my understanding that he applies the same market rate in both Los Angeles and San Francisco. I base this opinion on reviewing several fee motions and supporting declarations filed by Mr. Paradis. He provided a supporting declaration for the fee motion in *LAUSD v. Garcia*, 09-cv-9289 VBF (C.D. Cal.), Ninth Circuit Case No. 10-55879, in which he set forth his opinion that rates in Los Angeles are "generally comparable" to the rates in San Francisco and that "DRA does not make a distinction in its rates between Southern and Northern California cases." Ex. 13, ¶ 17, lines 7-10. Mr. Paradis' conclusion is supported by the decision in *Minor v. Christie*, 2011 U.S. Dist. LEXIS 9219, *22 [C-08-0545] (N.D. Cal. 2011) ("While the relevant community is San Francisco, and not Los Angeles or New York where the lawyers [in Minor] predominantly practice, the parties agree that the Los Angeles, San Francisco, and New York communities have comparable community rates."). Notably, Mr. Paradis attested that his 2013 rate was $825 an hour, the same rate now sought for Mr. DeSimone four years later. Ex. 13, p. 10 (DRA 2013 rate schedule).

19.    More recently, DRA and Paul Hastings were awarded fees at their requested rates in *G.F. v. Contra Costa County*, 13-cv-3667 MEJ (N.D. Cal. 2015) [Dkt. # 307] based on 2014 rates. The rates for each counsel are set forth in the supporting declaration of Mary-Lee Smith. [Dkt. # 241]. A copy of Ms. Smith's declaration is attached at Exhibit 14. Laurence Paradis' approved rate was $845 an hour, slightly above the 2015 rate sought for Mr. DeSimone. *Id.* at ¶ 12.

20.    As a more current point of comparison, I reviewed the fee motion filed by the ACLU of Southern California and other attorneys in *Franco-Gonzalez v. Holder*, 10-cv-02211 DMG (C.D. Cal. 2015). I provided a declaration in support of the ACLU's fee motion in *Franco-Gonzalez*, which is attached at Exhibit 3. I reviewed the case docket and on that basis believe that the parties recently settled the fees in *Franco*, which were subsequently approved the Court in the exercise of the independent obligation to review settlements in class actions. [Dkt. #866]. In *Franco*, the plaintiffs requested fees for Judy Rabinovitz of the ACLU Immigration Project. I know Ms. Rabinovitz for many years and have also reviewed sworn declarations she has submitted in various

1  cases, setting forth information about her legal education and experience. Based on this, I am aware
2  that Ms. Rabinovitz, like Mr. DeSimone, is a 1985 law graduate. The 2015 rate for her in the
3  *Franco* case was $825. Ex. 3, p. 3.

4  21. In *Hernandez v. Goliath, Inc.*, LASC BC 462953, the Los Angeles Superior Court
5  approved the 2013 rate of $795 an hour for Theresa Traber in a lodestar cross-check in the
6  settlement of a wage and hour class action. Exhibit 4, p. 5, ¶ 9. I have known Ms. Traber for almost
7  30 years and have provided supporting fee declarations to her in the past. Based on my personal
8  knowledge, I believe Ms. Traber to be a 1984 law graduate. Finally, in 2014, in *Rodriguez v. County*
9  *of Los Angeles*, cv-10-6432 CBM (C.D. Cal. Dec. 16, 2014), fees were awarded to attorneys Ron
10 Kaye (1988), and Dave McLane and Marilyn Bednarski (1986), at $775 an hour in a police
11 misconduct case. Exhibit 5, p. 14. I know the attorneys at Kaye, McLane, Bednaski & Litt and have
12 co-counseled with several of them.   Mr. DeSimone's skills are comparable to their skills, with
13 several years more of experience.

14 22. Although I know Mr. Seplow since 1999, when Mr. Hoffman joined the firm, I have
15 not co-counseled a case with him. I am, however, very familiar with his work and reputation in the
16 civil rights community. Based on this, I am of the opinion that Mr. Seplow is both highly skilled
17 and experienced and enjoys a reputation as such. Mr. Seplow and I are both members of a plaintiffs'
18 attorney organization, all of whom work on civil rights and civil liberties litigation. Mr. Seplow
19 frequently posts to the list in response to inquiries from other members of the group seeking advice
20 in cases.   In my observation, the posts by Mr. Seplow are always extremely informative with
21 extensive citation to applicable case law and procedural issues. On many occasions, he has posted
22 briefs that he has written in other cases. I have read those briefs and judge them to be of a very high
23 quality. Based on this experience, I am able to assess his skill as an attorney.

24 23. I am aware based on my review of various court orders that Mr. Seplow was awarded
25 fees at the rate of $630 in 2012 by the Court in *Charlebois v. Angels Baseball*, 2012 U.S. Dist.
26 LEXIS 91069 DOC (C.D. Cal. 2012).   The increase for Mr. Seplow in the three years since
27 *Charlebois* is approximately six percent a year. Based on my knowledge of market rates, including
28 my rates approved by the courts, I am of the opinion that this is a reasonable increase to adjust for

the fact that his prior rate was at the low end of the rate for comparably skilled attorneys.

24. My opinion about the reasonableness of Mr. Seplow's requested rate is also based on the rates for Judy London, the Directing Attorney for Public Counsel's Immigrant Rights Project. Judy London and Michael Seplow were classmates at UCLA School of Law and graduated in 1990. In *Franco-Gonzalez*, Ms. London's 2015 rate was $775 an hour. Ex. 3, p.3. The reasonableness of the rate of $760 an hour for Mr. Seplow is also supported by the 2014 fee award approved for Peter Eliasberg, a 1994 law graduate at the ACLU. In 2014, in post-appeal proceedings in *Vasquez v. Rackauckus,* 09-cv-01090 VBF (C.D. Cal. 2014), Mr. Eliasberg was awarded fees at the rate of $730 an hour. Because the Court's Order did not set out the approved rates, I have also attached the Declaration of Peter Bibring filed in support of the fee request. *See* Exhibit 6 (order); Exhibit 7, p.6 (listing fees). With five more years experience in 2015, the rate now sought for Mr. Seplow is only four percent above the 2014 rate awarded Mr. Eliasberg.

25. The rate sought for Mr. Seplow is also consistent with the rate approved for Michele Uzeta, a 1992 law graduate and the former legal director at Disability Rights Legal Center. In *Communities Actively Living*, the Court approved the 2012 rate of $700 an hour for Ms. Uzeta, a 1992 law graduate. Ex. 2, pp. 5,7. Mr. Seplow has five more years of experience than Ms. Uzeta had in 2012. The differential between his rate and Ms. Uzeta's is $12 annually.

26. As stated in paragraph 7, above, the rates in the Los Angeles legal market for civil rights and public interest attorneys are much lower than those of comparably skilled attorneys at large commercial firms despite the directive of the Supreme Court that the proper comparators are attorneys at large firms. *Blum*, 465 U.S. 886. The differential between the rates sought by Plaintiffs' counsel and the rates for attorneys at large firms of comparable experience engaged in similar complex litigation is more than 30 percent. For example, in *Franco-Gonzalez*, Michael Steinberg, a 1986 law graduate and a partner at pro bono counsel Sullivan & Cromwell, attested that his 2015 rate is over $1,000 an hour. Ex. 8, ¶ 27, p.15. In *LAUSD v. Garcia*, 09-cv-9289 VBF (C.D. Cal.), Ninth Circuit Case No. 10-55879, the 2014 rate for Daniel Perry, a 1997 law graduate and a partner at pro bono counsel Milbank, Tweed & Hadley, was also well over $1,000 and hour. Ex. 9, ¶ 7. Six years ago, Wayne Barsky, a 1983 law graduate and pro bono counsel at Gibson Dunn,

1  attested that his 2009 rate was $905 an hour. Ex. 10, p. 14. In 2009, Mr. Barsky had four years'
2  fewer experience than Mr. DeSimone has now and only one more year of experience than Mr.
3  Seplow has now, but billed at a rate considerably higher than the rates they seek in 2015. Finally,
4  the 2015 rate of $760 an hour requested by Mr. Seplow is the same rate at which Milbank Tweed
5  billed a 2008 law graduate in 2014. Ex. 9 at ¶10.

6  27.  I am informed that fees are also sought in this action for a 2007 graduate, Aidan
7  McGlaze, who clerked at the Ninth Circuit after graduation and also worked at a large firm for
8  several years. I am familiar with Aidan McGlaze, although I have not worked with him on a case.
9  Mr. McGlaze and I participate in a legal clinic to provide representation for homeless individuals
10 cited for "quality of life" violations.

11 26.  The rate requested for Mr. McGlaze is $530 an hour. It is my opinion that this rate
12 is well within the range of reasonable market rates. For example, in *G.F. v. Contra Costa County,*
13 Mary-Lee Smith of DRA, a 2005 graduate, was awarded fees at the 2014 rate of $580 an hour. *Id.*
14 Aidan McGlaze, a 2007 graduate, now has the same amount of experience as Ms. Smith did in 2014.
15 He seeks a rate $50 an hour below her approved 2014 rate. Ex. 14, ¶ 12; ; Ex. 16 at p. 23, ln. 12-14
16 ("the evidence submitted by Plaintiffs demonstrates that the range of rates requested by the
17 attorneys here are in line with the overall range of market rates for attorneys ,,, of similar abilities
18 and experience in this District between 2013 and 2014."). As another example, in the *Charlebois*
19 decision, the court awarded fees to David Sarnoff, a 2005 law graduate, at $460 an hour. Mr.
20 McGlaze has one more year of experience now than Mr. Sarnoff had in 2012. The 2015 requested
21 rate is 15 percent higher than the 2012 rate. This translates to a five percent annual increase;
22 however, when Mr. McGlaze's additional year of experience is factored in, the annual increase is
23 less than four percent.

24 27.  The 2015 rate of $530 an hour sought for Mr. McGlaze is also comparable to the
25 2012 rate of $525 an hour approved for Matthew Strugar, a 2004 law graduate then at DRLC. Ex.
26 2, pp. 6, 7. Mr. Strugar had eight years experience at the time, the same amount Mr. McGlaze has
27 now. Mr. McGlaze's rate is, effectively, lower than Mr. Strugar's 2012 rate since, three years later,
28 it is only $5 an hour higher.

28.     Mr. McGlaze's requested 2015 rate is slightly more than five percent above the 2014 rate approved for Caitlin Weisberg in *Rodriguez*. Ex. 5, p. 14. I know Ms. Weisberg as I co-counsel cases with her firm. I also provided a supporting fee declaration in *Rodriguez* and, on that basis, am aware that Ms. Weisberg graduated in 2008, they year after Mr. McGlaze. In 2014, she had two years' less experience than Mr. McGlaze has now. The differential between their rates is two-and-one-half percent annually.

29.     As a point of comparison to comparable attorneys in large firms, I have attached a declaration filed in *Jones v. Upland Housing Authority*, EDCV 12-2074 VAP (C.D. Cal. Feb. 24, 2014), by Amy Lally, a partner at Sidley Austin in Los Angeles serving as co-counsel with public interest lawyers. Ms. Lally attested that she is a 1998 law graduate and that her 2012 customary billing rate was $700 an hour and her 2014 rate was $825 an hour, an increase of almost 20 percent in just two years. Exhibit 12, ¶ 7. Mr. DeSimone has practiced 13 years longer than Ms. Lally had in 2012, when she billed at $700 an hour.

30.     As another comparison, in *Franco-Gonzalez*, associates at pro bono counsel Sullivan & Cromwell were billed at the 2015 rate of $865 an hour with only eight years of experience. Ex. 8, ¶ 48. Finally, in *G.F. v. Contra Costa County, supra*, pro bono counsel at Paul Hastings were awarded fees for a 2007 law graduate at $690 an hour. *See* Ex. 15, ¶ 30 (setting forth rates); Ex. 16 at p. 23, ln. 12-14.

31.     I am informed that Plaintiffs are seeking compensation for paralegal services. As the exhibits to my declaration demonstrate, it is customary to bill separately for paralegal time, rather than include it in the firm's overhead. The rates for paralegals in Southern California generally range from $175 to $295 an hour, depending upon the skill of the paralegal. *See* Ex. 3, ¶ 46, p. 20 ($230-240); Ex. 4, ¶9, p. 5 ($200-250); and Ex. 5, p. 14 ($175-$295).

I declare under penalty of perjury that the foregoing is true and correct. Executed this 6th day of January, 2016, at Los Angeles, California.

_____
CAROL A. SOBEL

11
DECL. OF SOBEL ISO MOTION FOR ATTORNEYS' FEES - CASE NO. 3:14-CV-02629-VC